IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2004

## RONNIE WEDDLE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County
Nos. C-03-203, C-03-244 and C-03-245    Donald H. Allen, Judge**

No. W2003-03041-CCA-R3-PC  - Filed January 21, 2005

The petitioner, Ronnie Weddle, appeals the dismissal by the Madison County Circuit Court of his petitions for post-conviction relief. On appeal, the petitioner argues that he was denied the effective assistance of counsel in connection with a previously negotiated plea agreement that disposed of two narcotics-related offenses. Upon review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); and Brigitte Tubbs-Jones, Jackson, Tennessee (at trial and of counsel on appeal), for the Appellant, Ronnie Weddle.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; James G. Woodall, District Attorney General; and Al Earls and Angela R. Scott, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

The petitioner stands convicted of two counts of possession of .5 grams or more of cocaine with intent to sell or deliver, Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (2003), and he is serving an effective sentence of 16 years. Pursuant to negotiations with the state, on February 11, 2003, the petitioner entered a best-interests plea to one charge and a guilty plea to the second charge. The plea agreement provided for minimum, Range I eight-year sentences, and because the petitioner was on bond when he committed the second offense, consecutive sentencing was mandatory. *See id*. § 40-20-111(b) (2003).

The facts underlying the petitioner's plea appear in the transcript of his plea submission, which is before us. On March 1, 2002, as the result of a traffic stop, 2.1 grams of cocaine were confiscated from the petitioner. The cocaine was packaged in three separate plastic

baggies. At the plea submission, the petitioner admitted possessing the cocaine, but he insisted that he did not intend to deliver or sell it. When the petitioner continued to protest his innocence of the charged offense, the trial court declined to accept his plea and declared a recess so the parties could further discuss the matter.

Following the recess, the parties announced a new plea agreement whereby the petitioner would enter a best-interests plea to the charge before the court and would plead guilty to a second pending drug charge, a resisting arrest charge, and a tampering with evidence charge. The agreement embraced an effective sentence of 16 years. The facts underlying the new set of charges were that on August 15, 2002, law enforcement officers executed a search warrant for the petitioner's residence. When the officers entered the residence, the petitioner resisted arrest and unsuccessfully attempted to swallow a plastic bag containing crack cocaine. The officers recovered the bag, later determined to contain 14.7 grams of crack cocaine. A further search of the residence and an outside shed uncovered an additional 24 grams of crack cocaine and $2,848 in cash. The petitioner gave a statement to the police admitting ownership of the cocaine.

The trial court initially was reluctant to approve the plea agreement. The state then explained to the trial court that in exchange for pleading to the charges, the defendant was receiving sentencing consideration in terms of a minimum, eight-year sentence for each drug charge, as a Range I offender, although the petitioner's prior criminal history would otherwise qualify him for Range II or Range III sentencing. By statute, the petitioner's sentences – whatever the range – had to be served consecutively. Armed with this explanation and the petitioner's sworn responses, the trial court accepted the plea agreement.

Approximately four months after the plea submission, the petitioner filed a series of three petitions for post-conviction relief that were consolidated for hearing on November 25, 2003. The petitions, essentially identical, alleged ineffective assistance of counsel in connection with the petitioner's pleas on the drug-related offenses. The evidence at the post-conviction hearing consisted of the testimony of the petitioner and petitioner's trial counsel. The petitioner began by describing his conversations with counsel prior to entry of his plea.

> Well, he was – you know, my understanding was, you know, he was going to get my time ran [sic] concurrent, you know, when I met him in his office. And, you know, when he was talking to Ms. Scott, you know, he's going to tell me to say "yes" to everything. I told him, "That's – that's too much time here, you know." I would rather – I, you know, because he wanted me to get – stop – drop the Motion for Discovery. He kept telling me that the Feds were going to come in and take over. I would rather for the Feds to have came [sic] over and took over because, you know, to me this is just as much time as the Fed time here.

The petitioner insisted that he did not have sufficient time to think about his pleas and that his attorney pressured him to enter the pleas. Also, the petitioner repeatedly asserted that his attorney told him to say "yes," to whatever question was posed.

In response to questioning by post-conviction counsel, the petitioner clarified that although he and the attorney had discussed concurrent sentencing, the petitioner understood that the plea agreement which he signed provided for consecutive eight-year sentences. The petitioner's explanation for signing the agreement was to "keep from the Feds coming in."

Additionally, the petitioner complained that the attorney was "supposed to have been suppressing" all the evidence but that the attorney "dropped" the suppression motion "to keep from the Feds coming in." The petitioner testified that his attorney "didn't do his job at all."

On cross-examination, the state attacked the petitioner's assertion that he did what his attorney instructed him to do by answering "yes" to everything. The plea submission plainly showed otherwise. The petitioner also contradicted his earlier testimony and tried to claim that even if the court told him that his sentences could not be served concurrently, he was "in fear," did not understand what the court said, and actually believed that the court was "going to put both together." As the cross-examination progressed, the petitioner's responses became increasingly evasive, argumentative, and nonresponsive. Even when the court asked if the petitioner was claiming that no one, including the court, had advised him that his effective sentence would be 16 years, the petitioner merely replied that he did not "know it was going to be sixteen" and that he "was thinking it was going to be just eight years run concurrent."

The petitioner called his former counsel, J. Colin Morris, as a witness and had him identify a suppression motion that he filed in connection with one of the petitioner's cases. Mr. Morris opined that the motion had merit. Although a search warrant was involved in the petitioner's second case, Mr. Morris did not file a suppression motion owing to his belief that the warrant was supported by probable cause.

On cross-examination, Mr. Morris explained that shortly after he filed the suppression motion, the state moved to revoke the petitioner's bond because of his subsequent arrest. After the second arrest, Mr. Morris entered into plea negotiations with the state. Part of the plea negotiations involved holding the respective motions in abeyance so the attorneys could discuss a final resolution of the petitioner's cases. Mr. Morris testified that he "practically begged" the state for concurrent sentencing, but because consecutive sentencing was mandatory, the state finally offered a minimum, eight-year sentence as a Range I offender. Mr. Morris communicated the state's offer to the petitioner; he recommended the offer to the petitioner as the "best deal" that could be obtained and explained that the offer required the petitioner to abandon his suppression motion.

Mr. Morris affirmed that he was familiar with the facts in the cases. He had filed discovery motions in both cases and had reviewed the state's files. The suppression motion was never withdrawn. It was pending at the time the petitioner entered his plea, which then rendered the

motion moot. Part of the reason that Mr. Morris believed the plea was in the petitioner's best interest involved the petitioner's prior criminal record that would have made him eligible for a minimum effective Range II sentence of 24 years. By pleading, the petitioner was sentenced as a Range I offender.

According to Mr. Morris, the second arrest of the petitioner while he was on bond "proved to be insurmountable" as far as securing concurrent sentencing. Moreover, the second case would have been much harder to defend because the petitioner had made inculpatory statements about possessing the cocaine with intent to sell or deliver. Mr. Morris readily admitted that the petitioner was not "happy" about the 16-year offer, but Mr. Morris was certain that the petitioner agreed to the offer as presented.

At the conclusion of the testimony, the court took a recess to review the transcript of the petitioner's February 11, 2003 plea submission. The court heard arguments from the parties, after which it denied the petition for post-conviction relief. The court issued thorough and comprehensive findings, which have greatly facilitated our appellate review. Among the court's findings, it specifically noted (1) the transcript of the plea submission refuted the petitioner's testimony that he simply answered "yes" and followed his attorney's instructions when he entered his pleas; (2) the petitioner understood what he was doing and, in fact, declined at the submission hearing to plead guilty to the first narcotics charge, at which point the court rejected the plea; (3) following a recess, a different negotiated plea was reached whereby the petitioner would enter a best-interests plea to the first charge and a guilty plea to the second narcotics charge, which had not yet been set for trial; (4) Mr. Morris was a credible witness, and the court files corroborated Mr. Morris' testimony that he filed discovery motions and was fully aware of the facts in both cases; (5) contrary to the petitioner's testimony, his attorney did file a suppression motion and was prepared to litigate the motion until the bond revocation issue arose; (6) the petitioner's counsel negotiated a very favorable "package deal" and did not render ineffective representation; and (7) the petitioner failed to carry his burden to obtain post-conviction relief.

Aggrieved by the denial of post-conviction relief, the petitioner has appealed. Our review convinces us that the post-conviction court's ruling should be affirmed.

The law is settled that the post-conviction petitioner bears the burden of establishing, at the evidentiary hearing, his allegations by clear and convincing evidence. Tenn. Code. Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.

1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. *See id.* at 697, 104 S. Ct. at 2069.

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 655 n.38, 104 S. Ct. 2039, 2050 n.38 (1984)).

Measured by these standards, it is readily apparent that the petitioner failed to carry his burden, and the evidence in the record certainly does not preponderate against the post-conviction court's findings. Before us, the petitioner argues that his attorney's failure to file a suppression motion deprived him of a "significant bargaining [chip] which might well have resulted in a different plea offer having been made." The state, however, made the most generous plea offer possible under the circumstances. It agreed to a minimum, Range I sentence for each narcotics offense. Neither the state nor the court had the discretion or authority to permit the sentences to be served concurrently. Consecutive service was mandatory. *See* Tenn. Code Ann. § 40-20-111(b) (2003). The petitioner has failed to demonstrate deficient representation, much less any resulting prejudice.

We have considered the possibility that the petitioner may be arguing that a suppression motion could have been successfully pursued, thereby resulting in the dismissal of charges and leading to either a reduced sentence or no sentence. Although a defense counsel's failure to litigate a Fourth Amendment claim may be alleged and pursued as ineffective, the petitioner has the burden to prove that his Fourth Amendment claim is meritorious. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574 (1986); *see Carpenter v. State*, 126 S.W.3d 879, 887-88 (Tenn. 2004) ("Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim."). The opinion of Mr. Morris, elicited by the petitioner, that the suppression motion filed in the first case "had merit" is hardly adequate to demonstrate counsel's ineffectiveness in failing to litigate the motion.

In summary, the petitioner offers nothing new on appeal to persuade us to disturb the trial court's ruling. The trial court's credibility determinations and factual deductions are clearly reasonable and foreclose the need for any prolonged discussion of the issues.

Consequently, for the foregoing reasons, we affirm the denial of post-conviction relief and the dismissal of the petitions.

_____
JAMES CURWOOD WITT, JR., JUDGE